UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re
DAVID PATRICK McCRANEY
and KIMBERLY McCRANEY,
      Debtors.                No. 13-09-15667-S


DAVID PATRICK McCRANEY,
      Plaintiff,

v.                         Adv. No. 10-1006-S

HIGH DESERT NEUROLOGY, INC.
      Defendant.

## MEMORANDUM OPINION ON MOTION
## TO SET ASIDE DEFAULT JUDGMENT

This matter is before the Court in a case removed from the
Fourth Judicial District Court, San Miguel County, New Mexico
("State Court" or "Court") on Plaintiff's Motion to Set Aside
Default Judgment (doc 17) and the Objection thereto by Defendant
High Desert Neurology, Inc. ("High Desert").  David Patrick
McCraney ("Plaintiff") appears through his attorney William F.
Davis & Assoc., P.C. (William F. Davis and Anne D. Goodman).
High Desert appears through its attorney Clifford C. Gramer.  For
the reasons stated below, the Court finds that Plaintiff's Motion
is well taken and should be granted.

### CORE OR NON-CORE PROCEEDING

Plaintiff's Notice of Removal states that this adversary
proceeding is both a "related to" case, Doc 1 ¶ 8, and a "core
proceeding", Id. ¶ 10.  Whichever the case, Plaintiff consents to
entry of final orders or judgments by the Bankruptcy Judge.  Id.

¶ 11. High Desert filed a Statement Pursuant to Bankruptcy Rule 9027(e) admitting that this action is a core proceeding. Doc 11.

Bankruptcy Court jurisdiction is established by 28 U.S.C. § 1334, which lists four types of matters over which the district court has bankruptcy jurisdiction: 1) cases "under" title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, etc. petition), 2) proceedings "arising under" title 11 (such as a preference recovery action under §547), 3) proceedings "arising in" a case under title 11 (such as plan confirmation), and 4) proceedings "related to" a case under title 11 (such as a collection action against a third party for a pre-petition debt). Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987). In the District of New Mexico, all four types have been referred to the bankruptcy court. See 28 U.S.C. § 157(a); Administrative Order, Misc. No. 84-0324 (D. N.M. March 19, 1992).

Jurisdiction is then further broken down by 28 U.S.C. § 157, which grants full judicial power to bankruptcy courts not only over cases "under" title 11 but also over "core" proceedings, §157(b)(1), but grants only limited judicial power over "related" or "non-core" proceedings, §157(c)(1). Wood, 825 F.2d at 91; Personette v. Kennedy (In re Midgard Corporation), 204 B.R. 764, 771 (10th Cir. B.A.P. 1997). This core/non-core distinction is important, because it defines the extent of the Bankruptcy

Court's jurisdiction and the standard by which the District Court (or Bankruptcy Appellate Panel) reviews the factual findings. Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999).

### Core proceedings

"Core" proceedings are matters "arising under" and "arising in" cases under title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise under" title 11 if they involve a cause of action created or determined by a statutory provision of title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise in" a bankruptcy if they concern the administration of the bankruptcy case and have no existence outside of the bankruptcy. Wood, 825 F.2d at 97; Midgard, 204 B.R. at 771. Bankruptcy judges may hear and determine core proceedings and enter final orders and judgments. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) contains a nonexclusive list of 16 types of core proceedings.

### Non-core proceedings

"Non-core" proceedings are those that do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. "Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the

Page -3-

bankruptcy estate." Celotex Corporation v. Edwards, 514 U.S. 300, 307 n.5 (1995). The Tenth Circuit has adopted the widely used Pacor, Inc. v. Higgins[1] test to determine if a proceeding is related: "the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy case." Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990).

Bankruptcy courts have jurisdiction over non-core proceedings if they are at least "related to" a case under title 11. 28 U.S.C. § 157(c)(1)("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.") However, unless all parties consent otherwise, 28 U.S.C. § 157(c)(2), bankruptcy judges do not enter final orders or judgments in non-core proceedings. Rather, they submit proposed findings of fact and conclusions of law to the district court, which enters final orders and judgments after de novo review. 28 U.S.C. § 157(c)(1); Federal Bankruptcy Rule 9033. See also Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corporation), 4 F.3d 1095, 1100-01 (2nd Cir. 1993)(discussing Section 157's classification scheme).

---

[1] 743 F.2d 984, 994 (3rd Cir. 1984)

28 U.S.C. § 157(b)(2) gives a nonexclusive list of 16 "core proceedings." The fact that a matter is listed among the "core proceedings" of 28 U.S.C. § 157(b)(2) cannot end the inquiry, however. In <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Company</u>, 458 U.S. 50, 76 (1982), the United States Supreme Court ruled that Article III of the Constitution "bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws." In <u>Marathon</u>, the debtor sought damages for alleged breaches of contract and warranty, misrepresentation, coercion, and duress. <u>Id.</u> at 56. The Supreme Court distinguished this adjudication of "state-created private rights" from the "restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power." <u>Id.</u> at 71. The Court found that the broad grant of jurisdiction to the bankruptcy courts found in 28 U.S.C. § 1471 (1976 ed., Supp.IV) was unconstitutional because it "impermissibly removed most, if not all, of the 'essential attributes of the judicial power' from the Art. III district court" and vested those attributes in the bankruptcy court. <u>Id.</u> at 87. Congress responded with the current jurisdictional scheme which categorizes matters as either core or non-core. Any determination by the Bankruptcy Court of the core status of a matter should be done with the dictates of <u>Marathon</u> in mind. See <u>Adams v. Grand Traverse Band of Ottawa and</u>

Case 10-01006-s    Doc 24    Filed 09/29/10    Entered 09/29/10 14:34:08 Page 5 of 37

<u>Chippewa Indians Economic Development Authority (In re Adams)</u>,
133 B.R. 191, 196 (Bankr. W.D. Mich. 1991)("[Section]
157(b)(2)(A) [matters concerning the administration of the
estate] was not meant to confer core status on all proceedings
having some effect on the estate.  If that was the intent behind
§ 157(b)(2)(A), then there would be no distinction between
'related to' and 'core' proceedings.")

   This removed case is a non-core proceeding.  It is an action
based only on state law that was commenced prepetition.  It is
not a "case" under title 11.  It does not "arise under" title 11
because it does not involve a cause of action created or
determined by a statutory provision of title 11.  It does not
"arise in" a title 11 case because it does not concern the
administration of the bankruptcy case and it has an existence
outside of and predating the bankruptcy.  It is, however, related
to a title 11 case because it "could alter the debtor's rights,
liabilities, options, or freedom of action."  Therefore, the
Bankruptcy Court has jurisdiction.  28 U.S.C. § 157(c)(1).

   Bankruptcy Courts can enter final orders and judgments in
non-core proceedings with the parties' consent.  28 U.S.C. §
157(c)(2).  In this case, the parties have consented.  Therefore,

Case 10-01006-s    Doc 24    Filed 09/29/10    Entered 09/29/10 14:34:08 Page 6 of 37

this is a non-core proceeding in which the Bankruptcy Court may enter final orders and judgments.[2]

**HISTORY OF CASE**

On August 7, 2007, Plaintiff filed a complaint for breach of contract and wrongful discharge ("Complaint") in the Fourth Judicial District Court, San Miguel County, New Mexico against High Desert and Jerry Williams ("Defendants"). Doc 4-1, p 50. On September 11, 2007, Defendants answered. Doc 4-1, p 42. Also on September 11, 2007, Defendants served their First set of interrogatories and request for production of documents. Doc 4-1, p 40.

On September 25, 2007, Plaintiff served a Subpoena duces tecum requesting that Plaintiff's personnel file be produced by October 5. Doc 4-1, p 38. Defendants objected to production on October 1, 2007, citing an improperly short deadline under state

---

[2]Mandatory abstention does not apply. Mandatory abstention is set out in 28 U.S.C. § 1334(c)(2). Mandatory abstention requires a timely motion to abstain. <u>Street v. The End of the Road Trust</u>, 386 B.R. 539, 547 (D. Del. 2008)(citing <u>Stoe v. Flaherty</u>, 436 F.3d 209, 213 (3rd Cir. 2006). <u>See also</u> <u>Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)</u>, 124 F.3d 619, 627 (4th Cir. 1997)(A party waives mandatory abstention by failing to file an appropriate motion.); <u>Mourad v. Farrell (In re V & M Management, Inc.)</u>, 321 F.3d 6, 8 (1st Cir. 2003)(Same.); <u>Personette v. Kennedy (In re Midgard Corp.)</u>, 204 B.R. 764, 776 (10th Cir. BAP 1997)(Same.) Mandatory abstention is also not jurisdictional. Lawrence P. King, Jurisdiction and Procedure under the Bankruptcy Amendments of 1984, 38 Vand. L. Rev. 675, 700 (1985).

rules.  Defendants also sought attorney fees as a sanction for violating the state rule.  Doc 4-1, p 33.

On October 3, 2007, Defendant filed a motion to dismiss for failure to state a claim and requested a hearing.  Doc 4-1, pp 25 and 31.

On October 23, 2007, Defendants filed a Motion to Compel a response to their First set of discovery.  Doc 4-1, p 19. Exhibit A to the Motion to Compel is the discovery set.  Doc 4-1, p 22.  On the same date they requested a hearing.  Doc 4-1, p 17. The court set a hearing for December 11, 2007.  Doc 4-1, p 16. On November 7, 2007 Plaintiff filed an Answer to the Motion to Compel.  Doc 4-1, p 15.  The Answer states:

> 1)  Plaintiff received the interrogatories sent by the
>     Defendant and is currently compiling the discovery
>     requested.
> 2)  Due to difficulty in gathering the requested
>     discovery, Plaintiff was not able to produce the
>     discovery.
> 3)  Plaintiff anticipates that he can fulfill the
>     requests by November 16, 2007.
> WHEREFORE, Plaintiff prays the Court extend his time to
> reply to the Defendants' interrogatories.

The State Court conducted the hearing on December 11, 2007. See FTR Reporter notes[3], doc 4-1, p 12.  Attorney Schwarz (Defendant's counsel in the state case) announced that Attorney Silva (Plaintiff's counsel in the state case) had agreed to

---

[3] These notes are not a verbatim transcript of the proceedings, but rather the notes of the person managing the FTR (digital court recording) system summarizing the proceedings.

Page -8-

dismiss the wrongful discharge claim.  The Court granted the
portion of the Motion to Dismiss that concerned punitive damages,
leaving only the breach of contract claim and directed Attorney
Schwarz to prepare the order.  Id., p 13.  The Court also granted
the Motion to Compel, ordering production by December 17, 2007,
as well as payment of $404.53 in attorney fees as a sanction.
See Order dated December 19, 2007, doc 4-1, p 10.  On December
17, 2007, the State Court entered a Stipulated Order that
dismissed the wrongful termination and punitive damage claims.
Doc 4-1, p 8.

On December 28, 2007, Defendants filed a Verified Motion for
an Order to Show Cause ("OSC") for a failure to comply with the
Order dated December 19, 2007.  Doc 4-1, p 1.  Attorney Schwarz
stated in the OSC that Defendants had not received the discovery
or the attorney fees ordered.  He requested:

> WHEREFORE, Defendants pray that this Court issue an
> order to show cause upon the Plaintiff David McCraney,
> for:
> A. Why he should not be held in contempt of court,
> fined, or imprisoned;
> B. Payment of additional attorney fees for this entire
> matter to be paid within 10 (ten) days;
> C. A dismissal of all claims brought by Plaintiff with
> prejudice but allowing Defendant High Desert to pursue
> whatever claims it may have against Dr McCraney in a
> separate action should it so decide to pursue; and
> D. Such further relief the Court deems just and proper.

The State Court set the hearing on the OSC for February 7, 2008.

On January 16, 2008, Plaintiff filed an Objection to Defendant's Second request for production of documents.[4]  Doc 5-2, p 38.  It states, in full:

> COMES NOW, Plaintiff, by and through his attorney,
> David Silva, of the Silva & Grano Law Finn and responds
> [to] Defendant's Second Set of Interrogatories as
> follows:
> 1.   Plaintiff will produce requested documents.
> 2.Plaintiff will produce requested documents with the
> exception of "Whom you charged" Plaintiff objects to answering
> due to HIPAA[5] and confidentiality issues.
> 3.   Plaintiff objects to requested information it is
> not relevant to the issues.
> 4.   Plaintiff objects to requested information it is
> not relevant to the issues.
> 5.   Plaintiff will produce requested documents.

On January 22, 2008 Defendants filed a Verified Amended Motion for an OSC for Plaintiff's failure to comply with the Order of December 19, 2007.  Doc 5-2, p 18.  As exhibits, it

---

[4]Apparently no Certificate of Service of this discovery request was filed by the Defendants.  Later in the file the Court finds a reference date of December 31, 2007.

[5]      The Health Insurance Portability and
         Accountability Act (HIPAA) imposes procedures
         on health care workers concerning the
         disclosure of medical information.  See,
         e.g., 42 U.S.C. § 1320d-2(d)(2)(The Secretary
         of Health and Human Services (HHS) shall
         adopt security standards and safeguards to
         insure confidentiality and protect against
         unauthorized disclosures).  Consistent with
         this statutory mandate, HHS promulgated rules
         and regulations governing the release and
         transmittal of "individually identifiable
         health information" by health care providers.
         See 45 C.F.R. 160.101 et seq.

Harris v. Whittington, 2007 WL 164031 at *2 (D. Kan. 2007).

Page  -10-

contains a letter to Attorney Silva from December 27, 2007 (Doc 5-2, p 24; stating nonreceipt and asking Attorney Silva to accept service of an OSC), a letter to Attorney Silva from January 10, 2008 (Doc 5-2, p 27; acknowledging receipt by fax of First discovery responses and noting missing documents and incomplete answers) and the faxed copies of the responses (Doc 5-2, p 32.) The court set the Amended OSC for hearing on March 11, 2008. Doc 5-2, p 16.

On January 29, 2008, Defendants filed a Motion to file a compulsory counterclaim. Doc 5-1, p 30. Exhibit A is the proposed counterclaim. Doc 5-2, p 1. Exhibit 1 to the proposed counterclaim is the Employment Agreement[6]. Doc 5-2, p 4. On this same date Defendants requested a hearing. Doc 5-1, p 28.

On February 4, 2008, Defendants filed a Second Motion to Compel responses to the Second discovery request[7]. Doc 5-1, p 20. Exhibit A is the Second discovery request. Doc 5-1, p 24. Exhibit B is Plaintiff's objection. Doc 5-1, p 24 (same as doc 5-2, p 38). Defendants sought a hearing. Doc 5-2, p 18.

The court set a hearing on the motion to file counterclaim and the second motion to compel for March 11, 2008. Doc 5-2, p 17.

---

[6]This copy includes page 8. Subsequent copies in the record omit page 8.

[7]The Second set was mailed December 31, 2007.

On February 11, 2008, Defendant Williams filed a Motion for Summary Judgment and request for hearing.  Doc 5-1, p 1 and Doc 6-1, p 61.

On February 18, 2008, Plaintiff answered the counterclaim. Doc 6-1, p 59.

On February 26, 2008, Defendants filed their Third Motion to Compel and request for hearing.  Doc 6-1, pp 41 and 56.  Exhibit A is the Second set of discovery.  Doc 6-1, p 46 (same as Doc 5-1, p 24).  Exhibit B is the Plaintiff's Objection to the Second set of discovery.  Doc 6-1, p 50 (same as Doc 5-2, p 38). Exhibit C is a copy of the Plaintiff's responses to the second set of discovery.  Doc 6-1 p. 51.  In Exhibit C, Plaintiff responded to interrogatory 1.  The responses to interrogatories 2 through 5 is set out:

> 2. If you performed any work or rendered any professional services during the period of 12 April 2007 through 11 July 2007, please state what you did, whether you charged tor it, how much you charged, whom you charged, and when you performed these services or work.
> Answer: Taking into account our objection to privileged health information ,this question has been asked and answered twice.
> 3. Plaintiff objects to answering this interrogatory.
> 4. Plaintiff objects to answering this interrogatory.
> 5. A copy of the lease will be sent by mail.  Also attached is a copy of an e-mail showing that Dr. McCraney credentialled himself with Comphealth.

The State Court conducted a hearing on March 11, 2008.  Doc 6-1, p 39.  From the FTR Reporter's Notes it is clear that the Court admonished Plaintiff's attorney, telling him never to

Page  -12-

respond to a discovery request by stating it is not relevant;
rather, the choice is either to produce or file a motion for
protective order.  The Court granted the Second motion to compel.
Attorney Silva made no reference to the "Objection" he filed to
the Second discovery.  The Court warned that if the discovery
were not produced, the lawsuit would go away.  He also awarded
$500 plus taxes as a sanction.

Also on March 1, 2008, the parties submitted a stipulated
order dismissing Defendant Jerry Williams with prejudice.  Doc 6-
1, p 38.

On March 27, 2008, the Court issued two orders.  First, an
Order granting the Second motion to compel.  Doc 6-1, p 36.
Second, an Order granting the motion to allow counterclaim.  Doc
6-1, p 35.

Defendant filed a counterclaim on March 27, 2008, and an
amended counterclaim on April 3, 2008.  Doc 6-1, pp 32 and 17.

On April 4, 2008, Defendant filed a Motion to Dismiss all of
Plaintiff's remaining claims and to grant default on Defendant's
counterclaim.  The reasons cited were Plaintiff's failure to
produce anything, including the lease promised to be mailed.  Doc
6-1, p 14.  Defendant requested a hearing.  Doc 6-1, p 12.  No
response was filed to the Motion to Dismiss, and the Court
entered an Order Granting the Motion to Dismiss on May 13, 2008.
Doc 6-1, p 10.

The state court file is then strangely silent until December 5, 2008, when Defendant filed a Response to the State Court's letter regarding a settlement facilitator. Doc 6-1, p 7. That letter is not in the file. Defendant agreed that a settlement facilitator would be a good idea.

On January 21, 2009, the State Court issued a Notice of Status Conference for February 3, 2009. Doc 6-1, p 5. The Court conducted the status conference on February 3, 2009. <u>See</u> FTR Reporter's Notes, doc 6-1, p 3. Attorney Silva stated that although he had sent the Notice of Status Conference to his client, he had not heard back. The next day the Court issued a Notice of Bench Trial for April 23, 2009. Doc 6-1, p 1.

On April 23, 2009, the day of the scheduled bench trial, Plaintiff filed a motion to set aside the dismissal and default. Doc 7-1, p 56. This was also the day that Defendant filed its Requested Findings of Fact and Conclusions of Law. Doc 7-1, p 51. The FTR Reporter's Notes for this hearing were filed May 14, 2009. Doc 7-1, p 48. The State Court did not conduct the bench trial on damages. Instead, the Notes indicate the Court heard and granted the Motion to set aside the default on the counterclaim, but denied the motion to set aside dismissal of the complaint. He also required Plaintiff to pay all Defendant's costs and ordered production of all documents within 30 days. If the payments were not made or the discovery nor produced, the

default would be reinstated.  At this point, Attorney Silva argued that Plaintiff could not produce patient names because of HIPAA.  The Court responded simply that he had to produce.

On April 30, 2009 Plaintiff filed an Application for Fees and Costs.  Doc 7-1, p 37.

On May 1, 2009, Plaintiff filed both a Certificate of Compliance, doc 7-1, p 31, and a Motion to Extend Time to Disclose Certain Documents, doc 7-1, p 32.

On May 4, 2009 Plaintiff objected to the amounts of fees and costs requested.  Doc 7-1, p 29.  On the same date he also objected (for the second time) to Discovery Request 2 because of HIPAA regulations.  Doc 7-1, p 27.

On May 11, 2009 Defendant replied to Plaintiff's objection to fees and costs.  Doc 7-1, p 24.

On May 13, 2009, the Court entered its order granting in part and denying in part Plaintiff's Motion to Set Aside.  Doc 7-1, p 22.

On May 15, 2009 Defendant filed a response to Plaintiff's Certificate of Compliance and Motion for an Extension, arguing that they were incompatible.  Doc 7-1, p 20.

On June 19, 2009 Defendant filed its Motion to Reinstate Sanctions for Failure to Make Discovery.  Doc 7-1, p 15.  The grounds set forth in the Motion were that Plaintiff has failed to obey court orders regarding production, that answers were

Page -15-

incomplete, the answers were handwritten, that Plaintiff had failed to disclose financial accounts[8] and that "McCraney continues to assert HIPAA even though that claim was previously rejected by this Court on the Second Motion to Compel, and Third Motion to Compel and by this Court's 13 May order." Id., p 7. Exhibit A to the Motion is a notarized statement from Plaintiff that he has not had sexual relations with any employee of High Desert nor has he induced any employee to leave that company.[9] Doc 7-1, p 10. Defendant argued that this was not the question asked. Exhibit B is a copy of bank statements produced by Plaintiff. Doc 7-1, p 12. Defendant argued that the bank statements showed two transfers from undisclosed financial accounts. Defendant also asked for a hearing on both the attorney fee request and the Motion to Reinstate. Doc 7-1, p 1. Plaintiff did not respond to this Motion.

The Court set August 31, 2009 to hear both the attorney fee issue and the Motion to Reinstate. Doc 8-1, p 47. And it conducted the hearing on that date. See FTR Reporter's Notes,

_____

[8] "In reviewing his bank account statements, they show very large cash transfers of $28,795 and $11,678 from an undisclosed account. This undisclosed account must be revealed in accordance with Discovery Request 2(b) of the First Set of Interrogatories and Requests for Production of Documents... Here, there is obviously another account which McCraney has the ability to withdraw funds [sic] and he failed to provide it." Doc 7-1, p 8.

[9] High Desert claimed in its counterclaim that these alleged behaviors constitute violations of the employment contract between the parties.

Page  -16-

doc 8-1, p 43.  It is not entirely clear from these Notes what
exactly was said.  Attorney Schwarz made references to transfers
from undisclosed bank accounts.  Attorney Silva stated that he
was unaware of those accounts because he had not spoken to his
client.  Schwarz also referred to the failure to provide patient
information and represented that the issue had been dealt with in
previous orders.  The Court then granted Defendant's request for
attorney fees and costs and reinstated the discovery sanctions
(that is, struck Plaintiff's answer to the counterclcaim).

On September 9, 2009 the Court entered two orders: one
allowing interim attorney fees for Defendant, doc 8-1, p 41; and
one Reinstating Sanctions and Judgment, doc 8-1, p 39.  Attorney
Silva never asked for a reconsideration of either order.

On October 15, 2009, the Court then set a bench trial for
February 10, 2010[10].  Doc 8-1, p 34.  Several pleadings follow in
the state case, but are not of particular relevance.  Plaintiff
filed a case under Title 11 on December 10, 2009.

On January 13, 2010, Plaintiff removed the case to the
United States Bankruptcy Court.  The Miguel County Court Manager
for the District Court certified the record of the state case and
it was filed for record in this adversary proceeding on January
13, 2010.  The Bankruptcy Court conducted a status conference on
February 3, 2010.  Plaintiff stated his intention to file a

_____

[10]The counterclaim asked for damages to be proved at trial.

Page  -17-

motion to set aside the default, and this Court set briefing
deadlines.  Plaintiff filed the Motion to Set Aside[11] on March
10, 2010, and Defendant responded on April 9, 2010.

Plaintiff's argument is that the State Court reinstated the
default based on incorrect allegations that he had failed to
disclose bank accounts and other grounds that do not support the
extreme remedy of default.  Doc 17, p 2.

Attached to Plaintiff's motion to set aside is an Affidavit
of David McCraney.  He states under oath that he responded to
discovery requests in reliance on his attorney's advice and with
the understanding that they were sufficient, including the
handwritten responses to the first set, the answers to the second
set, the bank statements, and other documents provided and the
affidavit he signed.  He further states that Attorney Silva did
not provide him with copies of pleadings other than the original
complaint and counterclaim.  He received a copy of the notice of
hearing on the Motion to Reinstate Sanctions which was set for
August 31, but he never was given a copy of the Motion itself.
McCraney called Attorney Silva after receiving the notice.  Silva
told him that the hearing was only to make him pay for High
Desert's expenses leading up to the April 23, 2009 damages trial.

_____

[11]Plaintiff is only seeking to set aside the September 9,
2009 order that, among other things, declared that Defendant was
entitled to a default judgment on its counterclaim against
Plaintiff.  It does not seek to disturb the May 13, 2008 order
that dismissed all of Plaintiff's claims with prejudice.

Page  -18-

McCraney was already scheduled to be on vacation at the time of the August 31 hearing and Silva told him there was no point in his attending the hearing because there was no way to dispute the sanctions. Silva did not tell him that the Court would consider reinstating the default judgment.

After the hearing, Silva told McCraney that High Desert had informed the judge that he had undisclosed bank accounts. McCraney now understands that Defendant represented to the Court that he had made transfers of $28,795 and $11,678 from undisclosed accounts. These representations were false. First, the transfers were only for $8,032.53 and $3,000.00, neither from an undisclosed account. The first was a transfer from his business account which had been disclosed, and the second was a simple deposit of a distribution from a business venture. The higher amounts represented to the Court were the balances in the account after the transfers.

With regard to the patient information disclosures, McCraney thought that if he produced this information it would become part of the public record and its disclosure would violate federal HIPAA law and expose him to civil liability, actions against his license, and even criminal charges. If Attorney Silva had ever discussed this issue with Attorney Schwarz, that fact had never been communicated to him. Consequently, he was awaiting a ruling from the judge on the objection to disclosure that he knew his

Page -19-

attorney filed, believing the judge would seal the record or
allow appropriate redaction or declare that he could produce it
without liability. McCraney has the patient information on hand
and is prepared to release it as soon as he obtains a ruling.
McCraney could and would have explained all of this to the judge
on August 31, 2009, if he had been present.

## OTHER FINDINGS

This Court has further observations about Attorney Silva's
representation of Plaintiff. His complaint alleged breach of
contract and wrongful discharge and sought actual and punitive
damages, attorney's fees and costs. It named both High Desert
and Jerry Williams the owner of High Desert. The Complaint does
not distinguish between the Defendants and does not specify who
the contract was with or which Defendant did what action. He
failed to attach a copy of the contract at issue. He then filed
a subpoena for Plaintiff's personnel file that did not allow
sufficient time under the rule to respond. Defendant objected
and did not produce. There is no indication he ever renewed his
request, sought a ruling or obtained the file. Defendants'
Motion to Dismiss points out that under the American Rule,
Plaintiff was not entitled to attorney fees. It also correctly
argued that a plaintiff must allege and prove wilful, wanton,
malicious, reckless, oppressive or fraudulent behavior to obtain
punitive damages. The complaint alleged none. Defendant also

argued that to state a claim for wrongful discharge a plaintiff must allege a protected activity and because of the employee's participation in that activity his employment was terminated. The complaint alleged no protected activity. Silva never responded to the Motion to Dismiss.

Silva's response to the Motion to Compel was that Plaintiff "is currently compiling" the discovery, it was difficult, and Plaintiff anticipated he could produce it. This is not a proper response. If his client could not timely respond to the discovery he should have alerted counsel, sought an agreed upon extension, or filed a motion for extension or protective order before the deadline to respond.

Before the first hearing, Silva agreed to withdraw the wrongful discharge claim. At the first hearing, the Court struck the punitive damage request almost without discussion, ordered compliance with discovery and assessed a fine.

The Defendants' Motion to File Counterclaim alleges that Silva did not respond when asked for concurrence in the motion. Then Silva answered the counterclaim before any order was filed allowing it to be filed.

Silva never filed a response to the Motion for Summary Judgment.

Plaintiff's January 16, 2008 objection to Defendants' Second set of discovery is simply a listing of what would and would not

be produced. Some items would be, some would not because they were "irrelevant" and some because of HIPAA. There is no relief requested in the objection. Specifically, it does not ask for a protective order.

At the next hearing, the State Court pointed out that he could not determine if an interrogatory was relevant unless either it was answered or dealt with through a motion for a protective order. The Court ordered production, and Silva did not raise HIPAA restrictions.

In the March 20, 2008 order, the Court ordered: "Plaintiff is cautioned by this Court to his failure to comply fully and completely with discovery may result in dismissal of his lawsuit with prejudice." So, not only was Plaintiff warned[12], Silva was definitely warned that things had better shape up.

The sole remaining Defendant High Desert filed the motion to dismiss and for default on April 4, 2008. Silva never responded. In the Order granting this motion, the Court stated "The Court has reviewed the motion and there being no response in opposition thereto finds the motion well taken."

Silva did not respond (in the record) to the Court's letter regarding a settlement facilitator. When the Court then set a status conference, Silva stated that he has not had contact with

---

[12]Perhaps, based on McCraney's affidavit this should say "Plaintiff should have been warned."

his client.  He did not state, however, that he made any attempt
to reach his client.

Defendant filed its Motion to Reinstate Sanctions for
Failure to Make Discovery on June 19, 2009.  The matter came on
for hearing on August 31, 2009.  The allegations of hidden bank
accounts should have been very troubling to Silva and sometime
between June 19, 2009 and August 31, 2009, he should have made
sure that he knew whether there were such accounts and why they
had not been disclosed.  Instead, at the hearing he only stated
he was unaware of them.

Finally, after not filing a protective order based on HIPAA,
Silva never again brought the issue squarely before the Court.
It was only after the Court ruled that he made indirect comments
about privacy laws.

This Court finds that Attorney Silva was the root of the
problem in this case.  Not only did he keep the client
uninformed, he affirmatively lead him to believe that everything
was going smoothly.  There is nothing in the extensive state
court record that suggests Plaintiff intentionally lied or
misrepresented anything or failed to disclose anything purposely.
This Court finds that Plaintiff did not default willfully.  He
has his attorney's behavior as a valid excuse for the defaults.

The Court also finds that Defendant has not demonstrated any
prejudice if the default judgment were set aside, other than

attorney fees and a time delay.  The Court can easily remedy that

by conditioning any relief on the payment of Defendant's fees.

**THE LAW**

Removal of a case to Bankruptcy Court is governed by Federal

Rule of Bankruptcy Procedure 9027.

> A notice of removal shall be filed with the clerk for
> the district and division within which is located the
> state or federal court where the civil action is
> pending.  The notice shall be signed pursuant to Rule
> 9011 and contain a short and plain statement of the
> facts which entitle the party filing the notice to
> remove, contain a statement that upon removal of the
> claim or cause of action the proceeding is core or
> non-core and, if non-core, that the party filing the
> notice does or does not consent to entry of final
> orders or judgment by the bankruptcy judge, and be
> accompanied by a copy of all process and pleadings.

Fed.R.Bankr.P. 9027(a)(1).  "Promptly after filing the notice of

removal, the party filing the notice shall serve a copy of it on

all parties to the removed claim or cause of action."  Id., §(b).

> Promptly after filing the notice of removal, the party
> filing the notice shall file a copy of it with the
> clerk of the court from which the claim or cause of
> action is removed.  Removal of the claim or cause of
> action is effected on such filing of a copy of the
> notice of removal.  The parties shall proceed no
> further in that court unless and until the claim or
> cause of action is remanded.

Id., §(c).  "All injunctions issued, orders entered and other

proceedings had prior to removal shall remain in full force and

effect until dissolved or modified by the court."  Id., §(i).

Page -24-

The Rooker-Feldman[13] doctrine is not an issue in removal.

> The Rooker-Feldman doctrine ... provides that only the [United States] Supreme Court has jurisdiction to hear appeals from final state court judgments. <u>Bear v. Patton</u>, 451 F.3d 639, 641 (10th Cir. 2006). Proper removal does not constitute an appeal, de facto or otherwise, of the state court proceedings but a continuation of them. <u>See</u> <u>Freeman v. Bee Mach. Co.</u>, 319 U.S. 448, 452, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) ("The jurisdiction exercised on removal is original not appellate."). Thus, the Rooker -Feldman doctrine has no application to a properly removed case where, as here, there is no attack on a separate and final state-court judgment.

<u>Jenkins v. MTGLQ Investors</u>, 218 Fed.Appx. 719, 723-24 (10th Cir. 2007)(Unpublished.)

The federal court takes a removed case "as it finds it on removal." <u>Butner v. Neustadter</u>, 324 F.2d 783, 785 (9th Cir. 1963). Therefore, if a default judgment is entered before removal, it is treated as a validly rendered default judgment in a federal proceeding. <u>Id.</u> at 785-86. After removal, federal law rather than state law governs the future course of the proceedings, notwithstanding any orders or judgments issued prior to removal. <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County</u>, 415 U.S. 423, 437 (1974). Therefore, it is proper for a movant in a removed case to file a motion to set aside a default in the

---

[13]The doctrine takes its name from two Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

Page -25-

federal case under Fed.R.Civ.P. 60(b)[14].  Butner, 324 F.2d at

786.  Indeed, the federal court can perform any act that it could

have as if the case originated in federal court.  See Maseda v.

Honda Motor Co., Ltd., 861 F.2d 1248, 1252 (11th Cir. 1988)(A

federal court may dissolve or modify injunctions, orders, and all

other proceedings which have taken place in state court prior to

removal.  A state court summary judgment did not foreclose

modification of the judgment in federal court.); Preaseau v.

Prudential Ins. Co. of America, 591 F.2d 74, 79 (9th Cir. 1979)

(Court compares removal to the situation where a case is

reassigned to a successor judge after denial of a motion to

dismiss or a motion for summary judgment.  There would be no

abuse of discretion in overruling the prior judge.  The practice

reflects the rule that interlocutory rulings are subject to

reconsideration by the court at any time.)(Citations omitted.);

Hawes v. Cart Products, Inc., 386 F.Supp.2d 681, 686 and 689 (D.

S.C. 2005)(The weight of authority allows a defendant to remove a

case to federal court after entry of a default judgment.  It is

well established that a federal district court has jurisdiction

to consider a motion for relief from an order of default entered

in state court.)(Citations omitted.); Laney v. Schneider Nat'l

Carriers, Inc., 259 F.R.D. 562, 564 (N.D. Okla. 2009)(A federal

---

[14]This rule is made applicable to bankruptcy by
Fed.R.Bankr.P. 9024.

court is free to reconsider a state court order and to treat the
order as it would any interlocutory order it might itself have
entered.)(Citations omitted.)

This Court will therefore look to federal cases and their
interpretations of the Federal Rules of Civil Procedure to
determine whether Plaintiff's motion to set aside should be
granted.  Fed.R.Civ.P. 55(c) states **"Setting Aside a Default or a
Default Judgment.**  The court may set aside an entry of default
for good cause, and it may set aside a default judgment under
Rule 60(b)."  Fed.R.Civ.P. 60(b) states:

> (b) **Grounds for Relief from a Final Judgment, Order, or
> Proceeding.**  On motion and just terms, the court may
> relieve a party or its legal representative from a
> final judgment, order, or proceeding for the following
> reasons:
> (1) mistake, inadvertence, surprise, or excusable
> neglect;
> (2) newly discovered evidence that, with reasonable
> diligence, could not have been discovered in time to
> move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or
> extrinsic), misrepresentation, or misconduct by an
> opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or
> discharged; it is based on an earlier judgment that has
> been reversed or vacated; or applying it prospectively
> is no longer equitable; or
> (6) any other reason that justifies relief.

The Tenth Circuit has stated that Rule 60(b) should be liberally
construed when substantial justice will be served.  <u>Jennings v.
Rivers</u>, 394 F.3d 850, 856 (10th Cir. 2005).

Rule 60(b)(1) provides that "[o]n motion and upon such
terms as are just, the court may relieve a party or a

party's legal representative from a final judgment ....
for the following reasons: (1) mistake, inadvertence,
surprise, or excusable neglect...." It "is an
extraordinary procedure" which " 'seeks to strike a
delicate balance between two countervailing impulses:
the desire to preserve the finality of judgments and
the incessant command of the court's conscience that
justice be done in light of all the facts.' " <u>Cessna
Fin. Corp.[v. Bielenberg Masonry Contracting, Inc.]</u>,
715 F.2d [1442] at 1444 [10[th] Cir. 1983)](quoting <u>Seven
Elves, Inc. v. Eskenazi</u>, 635 F.2d 396, 401 (5th
Cir.1981) (additional internal quotation marks
omitted)).

<u>Id.</u>

The Tenth Circuit set out some rules for dealing with Rule

60(b) motions:

Under Rule 60(b), which standards Rule 55(c) invokes
when a party is seeking relief from a default judgment,
a court may set aside a final judgment "[o]n motion and
upon such terms as are just." Fed.R.Civ.P. 60(b). The
several reasons listed in the Rule include setting
aside for: "mistake, inadvertence, surprise, or
excusable neglect," <u>id.</u> at (b)(1), or for: "fraud
(whether heretofore denominated intrinsic or
extrinsic), misrepresentation, or other misconduct of
an adverse party." <u>Id.</u> at (b)(3). It is also
established that a movant must have a meritorious
defense as well as a good reason to set aside the
default. <u>Greenwood Explorations, Ltd.</u>, 837 F.2d at
427; <u>Cessna Fin. Corp. v. Bielenberg Masonry
Contracting, Inc.</u>, 715 F.2d 1442, 1445 (10th Cir.
1983); <u>In re Stone</u>, 588 F.2d 1316, 1319 (10th Cir.
1978).

<u>United States v. Timbers Preserve, Routt County, Colorado</u>, 999

F.2d 452, 454 (10th Cir. 1993)(Footnote omitted).

Courts have established three requirements which must
be met when setting aside a default judgment under Rule
60(b): (1) the moving party's culpable conduct did not
cause the default; (2) the moving party has a
meritorious defense; and (3) the non-moving party will
not be prejudiced by setting aside the judgment. <u>See</u>

Page  -28-

> > > *Meadows*, 817 F.2d at 521; <u>INVST Fin. Group, Inc. v.</u>
> > > <u>Chem-Nuclear Systems, Inc.</u>, 815 F.2d 391, 398 (6th
> > > Cir.), <u>cert. denied</u>, 484 U.S. 927, 108 S.Ct. 291, 98
> > > L.Ed.2d 251 (1987); 6 Moore, supra, ¶ 55.10[1].  The
> > > Second Circuit considers the first factor in terms of
> > > whether the default was willful.  <u>Wagstaff-El v.</u>
> > > <u>Carlton Press Co.</u>, 913 F.2d 56, 57 (2d Cir. 1990),
> > > <u>cert. denied</u>, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d
> > > 263 (1991); <u>Davis</u>, 713 F.2d at 915.  Generally a
> > > party's conduct will be considered culpable only if the
> > > party defaulted willfully or has no excuse for the
> > > default.  6 Moore, <u>supra</u>, ¶ 55.10[1]; see also <u>Meadows</u>,
> > > 817 F.2d at 521 (receiving actual notice and failing to
> > > respond is culpable conduct).

<u>Id.</u>

> > > The determination of whether neglect is excusable "is
> > > at bottom an equitable one, taking account of all
> > > relevant circumstances surrounding the party's
> > > omission." <u>Pioneer Inv. Servs. Co.</u>, 507 U.S. at 395,
> > > 113 S.Ct. 1489 (discussing application of the excusable
> > > neglect standard of Fed. R. Bankr.P. 9006(b)(1)).
> > > Relevant factors include "the danger of prejudice to
> > > the [opposing party], the length of the delay and its
> > > potential impact on judicial proceedings, the reason
> > > for the delay, including whether it was within the
> > > reasonable control of the movant, and whether the
> > > movant acted in good faith." <u>Id.</u> "'[F]ault in the
> > > delay remains a very important factor-perhaps the most
> > > important single factor-in determining whether neglect
> > > is excusable.'" <u>United States v. Torres</u>, 372 F.3d
> > > 1159, 1163 (10th Cir. 2004) (quoting <u>City of Chanute v.</u>
> > > <u>Williams Natural Gas Co.</u>, 31 F.3d 1041, 1046 (10th Cir.
> > > 1994)).

<u>Jennings</u>, 394 F.3d at 856-57.  The plain language of the rule

allows relief for attorney negligence.  <u>Id.</u> at 856 n. 5.

Finally, the Tenth Circuit has ruled that default judgments are

"a harsh sanction" and that there is a strong policy favoring

resolution of disputes on their merits.  <u>Ruplinger v. Rains (In</u>

<u>re Rains)</u>, 946 F.2d 731, 732 (10th Cir. 1991).  Because it is

such a harsh sanction, due process requires that the default be the result of willfulness, bad faith, or fault. Id. at 733. Default judgments deprive a litigant his or her day in court and are appropriate only where a lesser sanction would not serve the interest of justice. Id. (Citation omitted.) Accord Sun v. Board of Trustees of the University of Illinois, 473 F.3d 799, 811-12 (7th Cir.), cert. denied, 551 U.S. 1114 (2007)(A default judgment is a "weapon of last resort" that is appropriate only when a party willfully disregards pending litigation. Default gives the other party a windfall; if there is a problem with discovery caused by an attorney the preferred course is to assess increasing penalties on the attorney before defaulting the client.)

**DISCUSSION**

Under Timbers Preserve, Routt County, 999 F.2d at 454, the Plaintiff must establish three conditions to set aside the default judgment: (1) his culpable conduct did not cause the default; (2) he has a meritorious defense; and (3) High Desert will not be prejudiced by setting aside the judgment.

As to the first condition (culpability), this Court found above that Plaintiff was not culpable. The default was actually caused by both 1) attorney negligence or misconduct or failures, and 2) misrepresentations made to the State Court that impacted its decision. The Court finds that, fundamentally, Defendant's

attorney, in his zealousness, overstated the facts and
Plaintiff's attorney underzealously did not bring to light
certain facts to either the State Court or his client.
Specifically, Defendant stated for a certainty that Plaintiff had
undisclosed accounts from which he transferred $28,705 and
$11,678.  Silva did not defend his client by disagreeing; instead
he merely stated he knew nothing about them, which is very
different from an affirmative statement that there were no other
accounts.  In fact, according to Plaintiff's affidavit, those
were the ending balances in the account after a transfer of
$8,032.53 from a disclosed account and a deposit (not transfer)
from a Florida business (not Plaintiff's business) of $3,000.
This Court is not finding that the misrepresentations were
intentional (it has insufficient information to make that
determination), but the misrepresentations did influence the
State Court.

    Second, this Court finds that the State Court was mislead by
statements that suggested it had previously ruled on the merits
of a motion regarding HIPAA disclosure.  "McCraney continues to
assert HIPPA even though that claim was previously rejected by
this Court on the Second Motion to Compel, and Third Motion to
Compel and by this Court's 13 May order."  Doc 7-1, p 7.  First,
this Court finds that Attorney Silva never properly brought the
HIPAA motion before the State Court.  This Court has reviewed the

state file and finds no notice of a hearing on the motion.
Second, as no party has provided transcripts, the Court does not
know the content of the exact arguments made to the State Court,
but can assume certain things from the orders that resulted from
the hearings.  There were few references to HIPAA in the FTR
Reporter's Notes.  Third, the Order regarding the Second Motion
to Compel, March 20, 2008, has no specific reference to HIPAA.
Doc 6-1, p 36.  There is only a blanket order to answer each and
every interrogatory fully and completely in a non-evasive manner
and to produce all documents requested.  Id.  Fourth, "the May 13
order", doc 7-1, p 22, has no specific reference to HIPAA.  The
order states: "Plaintiff shall answer all discovery requests
within thirty (30) days of this order and the failure to comply
is grounds to reinstate the discovery sanction and enter a
default against Plaintiff and in favour of Defendant."  And,
finally, the state court record does not contain an order dealing
with HIPAA issues[15].  "There are three ways in which Defendant

---

[15]45 C.F.R. § 164.512 sets out standards for disclosures of
individually identifiable health information.  Subsection (e)
states:
(e) Standard: Disclosures for judicial and administrative
proceedings.
(1) Permitted disclosures. A covered entity may disclose
protected health information in the course of any judicial or
administrative proceeding:
(i) **In response to an order of a court or administrative
tribunal, provided that the covered entity discloses only the
protected health information expressly authorized by such order;**
or

(continued...)

Case 10-01006-s    Doc 24    Filed 09/29/10    Entered 09/29/10 14:34:08 Page 32 of 37

(ii) **In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:**

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; **or**

(B) **The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.**

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) **For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:**

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; **or**

(B) **The party seeking the protected health information has**

(continued...)

Page -33-

may comply with 45 C.F.R. § 164.512(e)(1): '[O]btaining a court order,' 'sending a subpoena or discovery request where plaintiff has been given notice of the request,' or 'sending a subpoena or discovery request where reasonable effort has been made to obtain a qualified protective order.'" <u>Croskey v. BMW of North America,</u> 2005 WL 4704767 at *2 (E.D. Mich. 2005). None of these three methods was used in this case. Plaintiff therefore properly worried about disclosing the information. HIPAA calls for

---

[15](...continued)

**requested a qualified protective order from such court or administrative tribunal.**
(v) For purposes of paragraph (e)(1) of this section, **a qualified protective order means**, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
**(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and**
**(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.**
(vi) Nothwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.
(2) Other uses and disclosures under this section. The provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information. (Emphasis added.)

potentially severe penalties for its violation.  <u>See</u> 42 U.S.C. § 1320d-5.

The two factors listed above easily implicate either Rule 60(b)(1) (mistake, inadvertence, surprise, or excusable neglect) or Rule 60(b)(3) (misrepresentation).  Alternatively, the quality of the attorney's representation may implicate Rule 60(b)(6)[16] (any other reason that justifies relief.)  Therefore, condition 1 is satisfied.  <u>Compare</u> <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d 572, 578 (10th Cir. 1996)(Rule 60(b) relief is not available when a party takes deliberate action upon advice of counsel and misapprehends the consequences of the action.)(Citations omitted.)

Condition 2 requires a meritorious defense.  At the stage of ruling on a Rule 60(b) motion, the movant is not required to show that he will actually prevail on the merits if the judgment is set aside.  <u>Brendle's Inc. v. Dazey Corp. (In re Brendle's Inc.)</u>,

---

[16]Generally, clients are held responsible and accountable for the acts and omissions of their attorneys.  <u>Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd.</u>, 507 U.S. 380, 396 (1993).  However, at least four circuit courts of appeals have adopted the rule that a client is not responsible for an attorney's <u>gross</u> negligence.  <u>Community Dental Services v. Tani</u>, 282 F.3d 1164, 1169 (9th Cir. 2002)(Ninth circuit joins the Third, Sixth and Federal Circuits allow Rule 60(b) relief for an attorney's gross negligence.)  <u>See also</u> <u>D'Angelo v. State Farm Fire & Cas. Co.</u>, 32 Fed.Appx. 604, 605 (2nd Cir. 2002)(Gross negligence of attorney may be grounds for Rule 60(b)(6) relief if exceptional circumstances are shown such as mental disorder or misconduct such that there was a "constructive disappearance" or inability to provide adequate representation.)

Page  -35-

222 B.R. 770, 772 (Bankr. M.D. N.C. 1997). Rather, there must be allegations under which, if true, the movant could prevail on some or all of his claims. Id. at 773.

The counterclaim in this case appears at doc 6-1, p 32. It is a bare bones complaint that alleges the existence of a contract; a breach of the contract for four reasons: 1) failure to act in good faith, 2) failure to carry out duties, 3) Plaintiff's spending the night with an employee and 4) the employment of a High Desert employee; resulting loss; and a non-competition agreement. The contract is the same contract that Plaintiff sued on. Under Plaintiff's version Defendant breached the contract. Plaintiff claims that he gave written notice of his intent to leave employment as allowed by paragraph 9(b), and that Defendant fired him the next day in violation of paragraph 9(b) causing loss. The facts are not intensely complex or disputed. The judgment will probably be based in major part on a construction of the contract. The Court finds that Plaintiff's complaint itself shows a sufficient meritorious defense to the counterclaim in this case. Condition 2 is met.

Condition 3 requires that High Desert not be prejudiced by setting aside the judgment. As noted above, any financial prejudice for attorney fees can be remedied by requiring Plaintiff to pay Defendant's fees and costs for dealing with the Motion to Set Aside. There was some delay from Plaintiff's and

Plaintiff's attorney's conduct.  Delay alone, however, is not prejudice.  <u>SLC Turnberry, Ltd. v. The American Golfer</u>, 240 F.R.D. 50, 55 (D. Ct. 2007).

**CONCLUSION**

For the reasons set forth above, the Court will issue an Order Granting Plaintiff's Motion to Set Aside Default Judgment (doc 17) and set a pretrial conference.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  September 29, 2010

Copies to:

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM 87109

Clifford C Gramer, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536